UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

CRIMINAL NO.: 05-10014

UNITED STATES OF AMERICA
v.
BAHRAOUI

**MOTION TO DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

## I.  INTRODUCTION/MOTION

Mohamed Bahraoui, the defendant, moves this Honorable Court to dismiss the above enumerated indictments as untimely, in violation of his rights pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 (b).  This delay also violates the defendant's rights pursuant to U.S. Constitution Amendments IV, V, VI and XIV and F.R.Crim.P.5 (a).

## II.  FACTUAL BACKGROUND

These facts are taken from the pre-plea presentence report prepared by Denise Rivera, United States Probation officer, the offense conduct submitted by Aloke S. Chakravarty, assistant United States attorney, the factual statement provided by Lenore Glaser, Esq., the undersigned counsel for defendant and the file of proceedings maintained by the Immigration and Customs Enforcement Agency. ("I.C.E.").[1]

Mohamed Bahraoui is a citizen of Morocco.  He entered the United States on March 7, 1999 on a valid tourist visa which expired six months later.  He remained in the country, worked without authorization and paid taxes.

In 2003, the United States Congress required certain males from countries with large

---

[1]  I have also referred to this department as Immigration and the Executive Office of Immigration Review of the Department of Homeland Security simply as "the immigration court."

Muslim populations, including Morocco, to register with I.C.E. Bahraoui registered on January 10, 2003. At that time, his lack of legal status was noted, (in immigration - speak, he was classified as an "overstay" for remaining after his visa expired). His Moroccan passport was taken from him and he was served with a <u>Notice to Appear</u> dated January 10, 2003. The <u>Notice to Appear</u> is the charging document used by I.C.E. to begin a removal proceeding. The <u>Notice to Appear</u> asserted that he was in the United States without legal permission to remain, after his tourist visa expired. No action was taken at that time, but he was told, in essence, that he would be contacted at a later, unspecified date.

Sometime in October, 2004, Timothy Marshalsea contacted the F.B.I. He stated that he was a social acquaintance with Bahraoui. He told the F.B.I. that, about one month previous, in the context of a discussion about Islam, Bahraoui told him that the persons responsible for 9-11 were "justified." Marshalsea also stated that Bahraoui answered affirmatively when asked whether he would strap a bomb to himself and discharge it in the Prudential building if someone asked him to do so. Although there was no corroboration that these statements were made or that Bahraoui had any affiliation with any organization, Bahraoui was detained. The <u>Notice to Appear</u> became the basis for his arrest by I.C.E. and F.B.I. agents on October 29, 2004. He was interrogated by both F.B.I. and I.C.E. agents, and then held without bond, in I.C.E. custody.

On November 5, 2004, Bahraoui had a bond redetermination hearing before Patricia Shephard, administrative law judge for the Immigration Court. Timothy Marshalsea and F.B.I. Special Agent DiMarcos testified in support of the government's request to detain Bahraoui without bond as a "threat to national security." In his testimony, the agent mentioned that Bahraoui had obtained a false social security card, and had misrepresented himself as a citizen,

the subject of these complaints. He indicated that a criminal investigation was underway, and charges would be filed as soon as documents were obtained. These two violations became two of the three criminal charges now pending before this Court.[2]

At the hearing, Timothy Marshalsea testified to the statement, essentially as described above. The F.B.I. agent provided no further details to bolster or corroborate this information. When asked he said that he could not disclose the details but the F.B.I. considered Bahraoui a threat to national security. The government through the assistant United States attorney has admitted that there is no information to link Bahraoui to any group or activity other than the statement of Timothy Marshalsea. The Judge held Bahraoui, without bond as a threat to national security.[3] Subsequent removal proceedings were never calendared by the Immigration Court. Bahraoui was held in immigration custody from October 29, 2004 through January 27, 2005 almost ninety days after he was arrested. On January 27, 2005, he was taken into federal custody on this case. If Bahraoui had appeared before an Immigration Judge promptly, it is likely that he would have been removed or deported voluntarily very soon after his detention. I.C.E. has a copy of his passport which was taken from him when he registered in January, 2003. According to the Moroccan consul, a travel document generally requires only three to four working days from the request by I.C.E.[4] The travel document determines the length of time in the custody of I.C.E.

---

[2] The information about the third, involving his mortgage was obtained from the defendant when he was interrogated.

[3] A summary transcript is attached for the convenience of the Court.

[4] See affidavit of Luciana Pereira.

### III. ARGUMENT

When an alien is held without bond as a threat to national security, I.C.E. by its own requirements must expedite the removal. An alien who is held without bond as a "threat to national security" must be placed

> "in removal proceedings, or shall charge the alien with a criminal offense, not later than 7 days after the commencement of such detention. If the requirement of the proceeding sentence is not satisfied, the Attorney General shall release the alien."

8 U.S.C. § 1226(a).

Despite this requirement, the Immigration Court did nothing to expedite proceedings or indeed to process the removal at all.

The Speedy Trial Act, 18 U.S.C. § 3161 (b) and 3162 (a)(1) require that a defendant must be indicted within thirty days of his arrest. Fed.R.Crim.P. 5 (a) requires that a person arrested without a warrant for a federal criminal offense must appear before a federal magistrate judge without unnecessary delay. 8 U.S.C. § 1357 (a)(4) imposes the same obligation when an immigration agent makes a warrantless arrest for violations of federal criminal laws. Ordinarily, an immigration arrest is a civil proceeding, which will not trigger the Speedy Trial Act or Fed.R.Crim.P.5. United States v. Alvarez-Sanchez, 511 U.S. 350, 357 (1994). However, this Court and others have held that a defendant's criminal procedural rights attach when s/he is detained by immigration for later prosecution. United States v. Restrepo, 59 F. Supp.2d 133 (D. Mass 1999)   (J. Wolf); United States v. Cabral, 2000 U.S. Dist. Lexis 5472 (D. Mass 2000) (J. Wolf); United States v. Gomez Estrada, 2000 U.S. Dist. Lexis 2753 (D. Mass 2000) (J. Gertner); United States v. Okuda, 675 F.Supp. 1552 (D.S.D. Haw 1987). This Court has held that:

> "When a person is arrested and is to be charged for an offense that has nothing to do with his immigration status, he is entitled to a prompt hearing before a magistrate judge even if he is also detained for effecting his deportation."

Cabral, supra. at 20, citing United States v. Sotoj-Lopez, 603 F.2d 789, 790-1 (9th Cir. 1979). Immigration is required to act "with all deliberate speed." United States v. Restrepo, 59 F.Supp. 2d 133, 134 (U.S.D.C., 1999). Restrepo notes that the Speedy Trial Act may be triggered by both civil and criminal investigations in this context, citing also United States v. Osunde, 638 F. Supp. 171 (N.D. Cal. 1986).

When the Speedy Trial Act is violated, the remedy established by the Act, consonant with constitutional protections, is dismissal of those charges. 18 U.S.C. § 3162 (a)(1) provides in its relevant parts:

> "If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped."

Mohamed Bahraoui asserts that his rights were violated, and his detention was a "mere ruse" for investigation of criminal proceedings. First, the involvement of the F.B.I. in each stage indicates that there was more going on than merely activating a previous Notice to Appear. Indeed the testimony of the agent supports this conclusion.

In United States v. Okuda, 675 F. Supp. 1552, 4 (D. Haw 1987) and in Restrepo, the charges in the Notice to Appear were identical to the offense charged in the federal criminal case. The identity of the charges supported the conclusion, that the detention on immigration grounds was a "mere ruse" for criminal cases. The charges here are not identical but the government had

all the information it needed to press forward with its case. Likewise, the charges here relate to his status as an alien who overstayed his visa. Detention by the Immigration is only lawful when it is to aid deportation. United States v. Gomez-Estrada, 2000 U.S. Dist. Lexis 2753 (MA. 2000) citing Phan v. Reno, 56 F. Supp 2d 1149, 1156 (W.D. Washington, 1999). In United States v. Gomez-Estrada, 2000 U.S. Dist. Lexis 2753 (D.MA. 2000) and in United States v. Melo, 239 F.3d 395 (1st Cir. 2001), the courts refused to dismiss untimely indictments when the defendant was not prejudiced. For Melo, the delay was about six days. But in Restrepo, the defendant was held for fifty six days while the government "did nothing to facilitate deportation." Ibid. Bahraoui's situation is different from Gomez-Estrada and Melo because he was actually prejudiced. As noted, he would have been processed and in his country within a very short time. While it is not the subject of this claim, defendant opines that his rights to unreasonable seizure were violated by the denial of bond as a national security risk, when no evidence existed to corroborate the statements and, as the government itself admits, Marshalsea was a person of unknown reliability.

In United States v. Cabral, 2000 U.S. Dist Lexis 1542 (D. MA. 2000), the Court declined to dismiss the indictment because the law was not clear at the time and the government had altered its procedures to guarantee that prosecution decisions were made expeditiously. Four years later, the law is now completely understood. Here, the immigration proceedings were stayed and not moved forward, in violation of I.C.E.'s own rules and the F.B.I.'s stated intention was to file criminal charges.

### IV. CONCLUSION

Bahraoui has demonstrated that his rights pursuant to the U.S. Constitution and the

Speedy Trial Act have been violated and that he has been prejudiced by these violations. This Court should dismiss these criminal indictments as a matter of law and in its exercise of supervisory power.

Respectfully submitted,
MOHAMED BAHRAOUI
By his attorney,

| | |
|---|---|
|   /s/ Lenore Glaser<br>Lenore Glaser, Esq.<br>25 Kingston Street<br>6th Floor<br>Boston, MA 02111<br>(617) 753-9988<br>BBO #: 194220 | Dated: <u>April 19, 2005</u> |

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
OFFICE OF THE IMMIGRATION JUDGE
BOSTON, MASSACHUSETTS

In the Matter of:

**A#: 079 680 496**

**MOHAMED BAHRAOUI**

## SUMMARY TRANSCRIPT OF PROCEEDINGS

The undersigned counsel listened to the tape of the bond hearing for Mohamed Bahraoui on April 15, 2005. She was not permitted to obtain a copy of it. The Assistant United States attorney was unable to obtain a copy.

This transcript summarizes the key points made during the proceedings. It is not <u>verbatim</u> and in fact, many words are missing.

TRANSCRIPT:

- The Judge introduces herself, explains that the alien is there for a bond redetermination and that he is charged in a Notice to Appear with overstaying his tourist visa.

- The attorney for the defendant tells the Court that he admits to these charges and will seek withholding of deportation and/or voluntary departure as forms of relief. The Judge opines that Bahraoui probably is not eligible for withholding but that is not the purpose of this hearing.

- The I.C.E. attorney tells the Court that they are moving to detain Bahraoui without bond as a threat to National Security. He calls Timothy Marshalsea, a United States citizen, as his first witness.

- Marshalsea testifies that he has known Mohamed Bahraoui as a social acquaintance for about two years. Bahraoui's girlfriend Sylvana was friends with his wife, Vanessa.

- On either September 12, 2004 or September 19, 2004 he and his wife had a conversation with Bahraoui about their respective religions. Bahraoui is muslim, Vanessa is Catholic and Timothy is a professed atheist.

- Marshalsea asked him what he thought about September 11th, whether it was o.k. Bahraoui replied that it was justified in his faith. When someone does something evil to you, you must do something back. Bahraoui told Marshalsea that provision of weapons to Israel by the United States was such an evil.

- Bahraoui answered "yes" when Vanessa Marshalsea asked whether he would strap a bomb on himself and go into the Prudential Center, if asked. There was no conversation after this comment.

- Other than this statement, he never had any reason to be mistrustful or suspicious of Bahraoui in two years.

- Marshalsea did not know Clare's name. Although he had never met her, he thought that she lived in New Hampshire. He opined that Mohamed had once said that he was going to marry a woman in New Hampshire for papers, even though he hated the United States.[5]

- Marshalsea didn't report this statement to authorities for the next few weeks. He and Vanessa talked about it, but he wasn't sure what he wanted to do and was nervous.[6]

- Marshalsea was asked if he had noticed anything strange about Bahraoui in these two years. Marshalsea had not except that "He dresses all the time. Everyone's in jeans and he would be dressed up. Does seem strange as though never to be comfortable."

I.C.E. called F.B.I. special agent from the F.B.I./I.C.E. joint terrorism task force Special Gunnard DiMarco as its second witness. His job is to investigate threats - preliminary investigations, open files on suspected terrorists, fully identifying them and ruling out whether they are or not a threat to United States. Based on the information from Marshalsea, he opened up a case. Investigation continues and is ongoing.

- He did a background check and determined from I.C.E. that Bahraoui was illegal, working without authorization, had a temporary visa from Morocco. He entered on March 7, 1999 and went to Chicago to obtain a driver's license. According to Bahraoui's post-detention statement, the place to go was Illinois. He used an address that was not his.

- With this license he obtained a legal social security number. He stayed in Chicago for seven to ten days.

- He returned to Massachusetts where he got a legitimate Massachusetts license when he traded his Illinois driver's license.

---

[5] This attorney notes that Bahraoui would not be eligible to obtain papers in this country if he married a United States citizen. At a minimum, he would have to live outside this country for ten years before he could apply for any legal status.

[6] His wife is an illegal alien from Brazil. On information and belief, she was unable to obtain her papers through Marshalsea because she had previously been deported. She has asked I.C.E. to give her permanent resident status as a reward for the information about Bahraoui.

- On May 5th, 2001 he began working at Bertucci's in Waltham.  He claimed he was a United States citizen.  A subpoena was sent to Bertucci's corporate office and DiMarco was waiting for the documents.  A telephone call with the same verified that he worked 5/5/01-9/11/01 and in the I-9 identified himself as a United States citizen.  Bahraoui also admitted this in his post-detention statement.

- An inquiry about the social security card revealed that the number comes back to Bahraoui's name but is not authorized for employment.

- He also testified that a reliable witness whom he could not identify told him that Bahraoui has two girlfriends, including one in New Hampshire named Clare.  According to the unidentified witness, Clare was simply so that Bahraoui could remain in the United States.  Otherwise he would never marry an American because he hates the United States.[7]

- There is an ongoing criminal investigation on two charges: social security fraud and the I-9 lying on his application by saying he is a United States citizen.  He testified that the criminal investigation was proceeding, and he expected charges to be filed.

- The agent said that he was unable to disclose additional details because the investigation was ongoing, but the agency believed that Bahraoui is a national threat.

- The Judge decided that the conversation about religion is protected free speech.  So is someone's belief that actions on 9-11 were justified.

- She ruled that a "yes" answer to the direct question "Would you strap a bomb on yourself" is not free speech but fighting words.  She opined that there is a line of first amendment cases that free speech exception for a threat of harm.

- The Judge ruled that he is a threat to national security and held him without bond.  She noted that the appeal of the denial of bond was due by December 11, 2004.

I, Lenore Glaser do certify that I have prepared this summary transcript accurately to the best of my knowledge and ability.

  /s/ Lenore Glaser
Lenore Glaser, Esq.

---

[7] Other documents released by the government show that the source was his ex girlfriend, who is friends with Vanessa.  Ex girlfriends are notoriously unreliable for information about present girlfriends.

UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

CRIMINAL NO.: 05-10014

UNITED STATES OF AMERICA

v.

BAHRAOUI

**AFFIDAVIT OF LUCIANA PEREIRA IN SUPPORT OF BAHRAOUI'S MOTION TO DISMISS**

I. LUCIANA PEREIRA, being first duly sworn, depose and state :

1. My true legal name is Luciana Pereira. I am the legal assistant of Lenore Glaser Esq.

2. In this capacity, I contacted the Moroccan consulate by telephone at 212-758-2625. I spoke with Mary Ann Ali.

3. Ms. Ali told me that the Moroccan consulate routinely provides travel documents when requested by I.C.E. They take care of travel documents for Massachusetts.

4. When the person has a valid passport, the processing at their end usually takes 3-4 business days. No other document is needed other than the verification of the passport.

Signed under pains and penalties of perjury this 19th day of April, 2005.

/s/ Luciana Pereira
Luciana Pereira